**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **M.M., a minor, by his parents and natural guardians, and J.M. and V.M., individually in their own right,** | : | |
| | : | |
| | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **TREDYFFRIN/EASTTOWN SCHOOL DISTRICT and its BOARD OF DIRECTORS, DANIEL WATERS, JOYCE VIDELOCK, BETH ANNE KOB, and WALT THOMPSON,** | : | **No. 06-1966** |
| | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM AND ORDER

**Schiller, J.**                                                                     **September 1, 2006**

Plaintiffs, a ten-year-old child ("M.") and his parents, bring this action against Tredyffrin/Easttown School District, its Board of Directors, the superintendent of schools, the director of individualized student services, the principal of New Eagle Elementary School and Walt Thompson, a third grade teacher. Plaintiffs allege that Defendants denied M. a free and appropriate public education ("FAPE") during the 2005-2006 school year due to educational inadequacies and disability discrimination. Accordingly, they bring claims under the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), the Fourteenth Amendment of the U.S. Constitution, 42 U.S.C. § 1983 ("Section 1983"), and the Pennsylvania Constitution. Plaintiffs also allege negligent and intentional infliction of emotional distress and assault and battery. Defendants filed two motions to dismiss for failure to exhaust administrative remedies and failure to state a claim upon which relief may be granted. The Court grants the motions for the reasons discussed below.

I.      BACKGROUND

The Amended Complaint presents the facts as follows.  M. attends New Eagle Elementary School in Tredyffirin/Easttown School District ("the District"), where he began fourth grade in September 2005.  (Am. Compl. ¶¶ 2, 14.)  Years prior to the 2005-06 school year, the District determined that M.'s visual motor disability, fine motor disability and handwriting needs qualified him as a handicapped student in need of services and accommodations.  (*Id*. ¶ 11.)  M. had a Section 504 Service Plan Agreement ("504 Plan") with the District that provided for occupational therapy as needed and several classroom accommodations such as preferential seating, a notebook organizational system and use of a tactile-vestibular cushion.  (*Id*. ¶ 12 & Ex. A (M.'s 2005-06 504 Plan).)

On or about January 13, 2006, M.'s mother learned that his music teacher was unaware of M.'s disability and his 504 Plan.  (*Id*. ¶ 23.)  Two years prior, M.'s math teacher had been similarly unaware.  (*Id*.)  These two incidents caused M.'s parents to worry that his 504 plan was not being implemented.  (*Id*. ¶ 24.)  At the request of M.'s parents, Principal Beth Anne Kob and the Director of Individualized Student Services, Joyce Videlock, agreed to revise M.'s 504 plan and to determine whether he qualified for special education services.[1]  (*Id*. ¶ 26-27.)  A meeting addressing M.'s educational and safety needs was held on March 7, 2006, in which the following people participated: M.'s parents, Principal Kob, Director Videlock, M.'s fourth grade classroom teacher, math teacher, guidance counselor, instructional support teacher, school occupational therapist, pediatric

---

[1] The Amended Complaint does not address the outcome of the District's determination regarding M.'s qualification for special education services.  According to Defendants, the District determined that M. does not qualify as a student with a disability entitled to special education under the IDEA.  (Defs. Sch. Dist., Bd. of Directors, Waters, Videlock & Kob's Mem. of Law in Supp. of Mot. to Dismiss Am. Compl. [hereinafter Defs.' Mem.] at 2.)

optometrist and pediatric occupational therapist.  (*Id.* ¶ 28.)

M.'s safety needs were discussed at the March 7, 2006 meeting due to a series of incidents that had occurred involving M. and Defendant Thompson, a third grade teacher with a classroom adjacent to M.'s fourth grade classroom.  (*Id.* ¶¶ 9, 14.)  On or about December 1, 2005, Thompson ridiculed M.'s handwriting while M. was working in a hallway with other fourth-graders.  (*Id.* ¶ 15.) Thompson said, "Your handwriting stinks!  It looks like you write with your feet!  You're in fourth grade?  I can't believe you get away with this!  I'm going to get some of my third graders.  They will laugh at this!  Doesn't it look like M. writes with his feet?"  (*Id.*)  Thompson brought two of his third grade students into the hallway and placed their journals in M.'s face, saying, "She has good handwriting!" and "He used to write with his feet, but it didn't stink!"  (*Id.*)  At home, M. cried to his parents about Thompson's ridicule and said he was afraid to go to school the next day.  (*Id.*) Indeed, on December 2, 2005, M. stayed home from school.  (*Id.* ¶ 16.)

M.'s parents informed Principal Kob about the December 2, 2005 hallway incident.  (*Id.*) In response to an email inquiry from M.'s parents regarding Thompson, Principal Kob wrote:

> We have investigated the allegation and determined that the teacher did act inappropriately with respect to M. and made insensitive statements.  We have taken appropriate action with the teacher to make sure this does not happen again with M. or any other child.  We have taken steps to minimize contact between M. and Mr. Thompson.

(*Id.* Ex. C (Kob's email, Dec. 16, 2005, full name redacted).)  M. missed school on December 5, 2005 because he visited his pediatrician to get a referral to a psychologist.  (*Id.* ¶ 18.)  To date, M. receives psychological services at his parents' expense.  (*Id.*)  M. returned to school after Principal Kob assured him on December 7, 2005 that he would not have any contact with Thompson.  (*Id.* ¶ 20.)

On December 15, 2005, M. told his parents that Thompson stared at him on that day and during the previous week, causing him to be afraid to go to school.  (*Id*. ¶ 20.)  On February 10, 2006, M.'s parents informed Principal Kob that Thompson continued to stare at M.  (*Id*. ¶ 25.)  At a meeting on February 24, 2006, M.'s parents told Principal Kob and Director Videlock that Thompson's behavior violated M.'s 504 Plan.  (*Id*. ¶ 26.)  To minimize contact between M. and Thompson, the following measures were taken: (1) Principal Kob told Thompson to avoid contact with M.; (2) M.'s desk was moved so it could not be seen from the hallway or Thompson's classroom; (3) M.'s teacher no longer asked any students to work in the hallway outside Thompson's classroom; (4) the windows of M.'s classroom door were covered; (5) M.'s classroom teacher walked her class in different routes so as to avoid Thompson's class; (6) M.'s classroom teacher kept him close when Thompson's class approached; and (7) the third and fourth grade bus departures for a field trip were staggered.  (*Id*. ¶¶ 27, 29, 31 & Ex. D (Kob's list of actions taken to address M.'s parents' concerns, Mar. 7, 2006).)  Beginning April 27, 2006, an adult aide was assigned to accompany M. at school, ensuring there was no contact between Thompson and M., but the aide was not required to be with M. during class.  (*Id*. ¶¶ 41, 89.)  School officials also offered to move M. to another school building, an offer that Plaintiffs rejected.  (*Id*. ¶ 43.)

Incidents of Thompson staring at M. also occurred on March 21, April 5, and May 3, 2006.  (*Id*. ¶¶ 30, 32, 44.)  On April 5th, Thompson stood at M.'s locker, staring at M., blocking his path and brushing against him.  (*Id*. ¶ 32.)  On May 3rd, Thompson walked past M.'s desk at least six times while M. took a math test in the library.  (*Id*. ¶ 44.)  On or about April 20, 2006, M.'s parents informed Superintendent Daniel Waters of M.'s growing fear of Thompson, and they asked "if he knew whether Thompson made fun of other students."  (*Id*. ¶ 37.)  Waters informed them of two

4

other complaints against Thompson.  (*Id*.)  M.'s psychologist advised that he be kept home, and M.

missed five days of school at the end of April.  (*Id*. ¶ 38.)

Plaintiffs commenced this action on May 9, 2006.  (*Id*. ¶ 88.)  On May 31, 2006, as M. sat

on the floor, Thompson deliberately stepped on M.'s finger in retaliation for filing the lawsuit.  (*Id*.

¶¶ 45, 88.)  After M. returned home that day, his finger was put in a splint.  (*Id*. ¶ 45.)


## II.     STANDARD OF REVIEW

Defendants' motions to dismiss are brought pursuant to Federal Rules of Civil Procedure

12(b)(6) for failure to state a claim upon which relief can be granted and 12(b)(1) for failure to

exhaust administrative remedies.  A 12(b)(6) motion tests the legal sufficiency of a complaint, and

it will only be granted if it is clear that relief cannot be granted to the plaintiff under any set of facts

that could be proven consistent with the complaint's allegations.  *Hishon v. King & Spalding*, 467

U.S. 69, 73 (1984) (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  In considering a 12(b)(6)

motion, courts must accept as true all factual allegations in the complaint and must draw all

reasonable inferences in favor of the non-moving party.  *Bd. of Trs. of Bricklayers & Allied*

*Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc.*, 237 F.3d 270, 272 (3d Cir. 2001).

Courts, however, are not obligated to credit a complaint's "bald assertions" or "legal conclusions."

*In re: Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997) (citation omitted).

Defendants' assertion that Plaintiffs have failed to exhaust their administrative remedies is

a challenge to this Court's subject matter jurisdiction.  When a defendant challenges subject matter

jurisdiction, the plaintiff bears the burden of persuasion to prove that the case is properly before the

court. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) (*citing Mortenson*

*v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  A challenge to a court's subject matter jurisdiction may take the form of a facial attack, which attacks the complaint on its face, or a factual attack, which attacks the existence of jurisdiction in fact apart from the pleadings. *Mortenson*, 549 F.2d at 891.  In a facial attack, a court must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party.  *Id*.  In a factual attack, a court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. . . . [N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  *Id*.

## III.    DISCUSSION

Plaintiffs' Amended Complaint contains five counts.  In Count I, Plaintiffs bring claims under the IDEA alleging that: (1) Defendants failed to ensure M. has equal opportunity to participate in school activities; (2) Defendants failed to protect M. from discrimination based on his disabilities; (3) Defendants failed to implement M.'s 504 Plan and to meet his educational needs; and (4) Defendants failed to provide M. with a FAPE because M. did not have a safe school environment. (*Id*. ¶¶ 50-53.)  Plaintiffs also assert that Defendants' conduct violated M.'s due process and equal protection rights, and they bring Section 1983 claims based on the violation of M.'s rights under the IDEA and the Fourteenth Amendment.  (*Id*. ¶¶ 49, 59.)

In Count II, Plaintiffs bring claims under Section 504, asserting disability discrimination and denial of a FAPE because: (1) the District denied M. the opportunity to participate in school programs provided to other children; and (2) Defendants aided and perpetuated discrimination

6

against M. by allowing Thompson to have contact with M. and to remain a public school employee. (*Id*. ¶¶ 64-65.)

In Count III, Plaintiffs bring claims under Article I § 26 and Article III § 14 of the Pennsylvania Constitution. (*Id*. ¶¶ 68-69.) Plaintiffs allege that Defendants violated these provisions by permitting discrimination against M. and by failing to provide him with a FAPE[2] and a safe school environment. (*Id*. ¶ 69-71.) In Count IV, Plaintiffs bring claims of negligent and intentional infliction of emotional distress against all Defendants. (*Id*. ¶¶ 77-82.) Finally, in Count V, Plaintiffs allege that Defendant Thompson committed assault and battery by putting M. in reasonable fear of bodily harm for six months and by stepping on M.'s finger. (*Id*. ¶¶ 86-88.)

All Defendants seek dismissal of all counts of the Amended Complaint with the exception of Thompson, who does not seek dismissal of the assault and battery count. (Def. Thompson's Mot. to Dismiss Am. Compl. in Part ¶ 1.) In their motions to dismiss, Defendants argue that most of Plaintiffs' federal claims are derivative of rights under the IDEA and Section 504 such that Plaintiffs must exhaust their administrative remedies before filing a complaint in court. (Defs.' Mem. at 3; Def. Thompson's Mem. of Law in Supp. of Mot. to Dismiss Am. Compl. in Part [hereinafter Thompson's Mem.] at 5-8.) In terms of the IDEA, Section 504, Section 1983, and Fourteenth Amendment claims, Defendants contend that M. has not properly alleged a cause of action and M.'s

---

[2] A FAPE is "the provision of regular or special education and related aids and services that [ ] are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met." 34 C.F.R. § 104.33(a). The IDEA and Section 504 offer the same protections for provision of a FAPE. *See* 20 U.S.C. § 1401(9) (2006); *see also W.B. v. Matula*, 67 F.3d 484, 492-93 (3d Cir. 1995) ("While IDEA is phrased in terms of a state's affirmative duty to provide a [FAPE], the Rehabilitation Act is worded as a negative prohibition against disability discrimination in federally funded programs. . . . There appear to be few differences, if any, between [the two].").

parents lack standing. (Defs.' Mem. at 3; Thompson's Mem. 8-15. ) According to Defendants, Plaintiffs also have not alleged facts necessary to establish their tort claims or their claims under the federal and Pennsylvania constitutions. (Defs.' Mem. at 3.)

## A.     Standing

To have standing in federal court, a plaintiff must show an injury in fact that can be traced to a defendant's actions. *Valley Forge Christian Coll. v. Am. United for Separation of Church & State*, 454 U.S. 464, 472 (1982) ("Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'" (*quoting Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 41 (1976))). An injury in fact is "an invasion of a legally protected interest which is [ ] concrete and particularized." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Also, "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

The Amended Complaint asserts all federal claims not only on behalf of M. but also individually in J.M. and V.M.'s own right. However, most injuries alleged in the Amended Complaint describe injuries suffered solely by M. (*See* Am. Compl. ¶¶ 54-55, 69-70.) J.M. and V.M.'s alleged injuries relate to their payment of health care providers for treatment of M.'s injuries.[3] (*Id*. ¶ 58; Pl.'s Mem. at 7.) First, J.M. and V.M. claim that they paid for M. to see a

---

[3] The Amended Complaint states:
Defendants' conduct against M. has required and will continue to require M.'s parents to expend substantial sums of money for legal fees to defend M. from unlawful discrimination and for medical and psychological care for their son, and for their own care needed to address problems caused by M.'s untenable situation in public school.
(Am. Compl. ¶ 58.)

pediatric occupational therapist and a pediatric optometrist, and these services should have been provided by the school under M.'s 504 Plan. (Am. Compl. ¶ 13.) Second, J.M. and V.M. paid for M. to see a psychologist, beginning soon after the December 1, 2005 incident of Thompson ridiculing M.'s handwriting. (*Id.* ¶ 18.) Third, J.M. and V.M. paid for their son's treatment resulting from the alleged assaults and battery by Thompson. (*Id.* ¶ 92.) In addition, J.M. and V.M. suffered worry and upset over M.'s school situation, and the assaults and battery on M. resulted in "their own psychological and emotional devastation and treatment." (*Id.* ¶¶ 24, 36, 92.)

M.'s parents lack standing under the IDEA because that statute does not create substantive rights for parents. *Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 233-36 (3d Cir. 1998) (examining language and legislative history of IDEA, case law and policy considerations to reach conclusion that children are real parties in interest and parents do not share joint rights with them under IDEA); *Matthew M. v. Willam Penn Sch. Dist.*, Civ. A. No. 01-7177, 2002 U.S. Dist. LEXIS 10385, at *12 (E.D. Pa. June 11, 2002) ("[W]hile parents have standing to bring claims on behalf of their child, they do not have standing to sue in their own right under the IDEA."). By analogy, J.M. and V.M. lack standing under Section 504, which prohibits discrimination against individuals with disabilities and provides for the provision of a FAPE for handicapped students.[4] *See* 29 U.S.C. § 794 (2006).

Moreover, J.M. and V.M. do not seek redress for violations of their own rights, but rather they rest their federal claims for relief on M.'s legal rights. In *Beauchamp v. Chichester School*

---

[4] Lack of standing in their own right does not prevent parents from recouping costs for services that should have been provided by the school; the administrative process or a court are able to order parental reimbursement based on a child's IDEA claim. *See Matthew M.*, 2002 U.S. Dist. LEXIS 10385, at *11 (*citing Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 11-12 (1993)).

*District*, a student, his mother and her husband brought a Section 1983 action against the school district and several of its employees, alleging that the defendants acted with deliberate indifference to the student's constitutional rights by failing to protect him from a peer who attacked him.  Civ. A. No. 05-4141, 2005 U.S. Dist. LEXIS 28677, at *1 (E.D. Pa. Nov. 17, 2005).  The court rejected the argument that the student's mother and her husband had standing because they paid the medical bills for treatment of the child's injuries.  *Id*. at *6-*7.  The court concluded that the mother and her husband lacked standing to bring claims in their own right because their claims for relief relied on the legal rights of their son.  *Id*.  Likewise, J.M. and V.M. lack standing to bring claims in their own right under Section 504, the Fourteenth Amendment, and Section 1983.

For these reasons, the Court dismisses J.M. and V.M.'s individual claims under the IDEA, Section 504, the Fourteenth Amendment and Section 1983.

### B.      Exhaustion of Administrative Remedies

The central purpose of the IDEA is to ensure that children with disabilities have a FAPE and that their rights are protected.  20 U.S.C. § 1400(d).  In general, a plaintiff must exhaust the state IDEA administrative review process before filing a civil action seeking relief that is available under the IDEA.  20 U.S.C. § 1415(l).  The IDEA's administrative exhaustion requirement provides that:

> Nothing in this title shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this part, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this part.

20 U.S.C. § 1415(l).  The administrative process utilizes the expertise of local agencies, resolves evidentiary disputes, develops a factual record, and encourages consistency and procedural

efficiency. *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 779 (3d Cir. 1994) (The IDEA administrative "process offers an opportunity for state and local agencies to exercise discretion and expertise in fields in which they have substantial experience."); *Lester H. v. Gilhool*, 916 F.2d 865, 869 (3d Cir. 1990).

The exhaustion requirement applies to all claims for relief available under the IDEA, even if a claim arises under a different cause of action. *Jeremy H. v. Mount Lebanon Sch. Dist.*, 95 F.3d 272, 281 (3d Cir. 1996). As the Court discusses below, Plaintiffs' federal claims seek relief available under the IDEA. However, exhaustion is excused when the administrative process would be futile or inadequate. *Honig v. Doe*, 484 U.S. 305, 327 (1988); *W.B.*, 67 F.3d at 495. Plaintiffs invoking the futility exception bear the burden of proving that administrative exhaustion would be futile or inadequate. *See Honig*, 484 U.S. at 327.

It is undisputed that Plaintiffs have not utilized Pennsylvania's IDEA administrative process to redress any of their claims. As justification, Plaintiffs invoke the futility exception and argue that exhaustion is not required for a Section 504 discrimination claim. (Pls.' Answer in Opp'n to Defs.' Mot. to Dismiss ¶¶ 3, 5.)

## C.    IDEA Claim

Plaintiffs' IDEA claim asserts that Defendants caused educational inadequacies and disability discrimination that deprived M. of a FAPE. (Am. Compl. Count I.) These issues fall squarely within the purview of the state administrative review process, which is designed to determine whether a child's needs are being met through provision of a FAPE.[5] *See* 20 U.S.C. § 1415.

---

[5] According to the District, M. does not qualify as a student with a disability entitled to special education under the IDEA. (Defs.' Mem. at 2.) As a child with a disability who does not

Plaintiffs argue that exhaustion of the administrative process would be futile because they participated in one resolution meeting and one Section 504 meeting and because J.M. and V.M.'s other attempts to confer with school administrators resulted in "one empty promise after another." (Pls.' Mem. at 3; Pls.'Answer in Opp'n to Def. Thompson's Mot. to Dismiss ¶¶ 6-7.)  The Court rejects this assertion of futility based on past interaction between M.'s parents and some of the Defendants.  *See Falzett v. Pocono Mountain Sch. Dist.*,150 F. Supp. 2d 699, 703 (M.D. Pa. 2001) (administrative exhaustion is not futile because parties' past negotiations have failed or because plaintiff believes administrative proceedings will not resolve dispute).  The limited past interaction between the parties does not indicate that evaluation by independent hearing officers would be futile.

Plaintiffs also contend that exhaustion would be futile because they seek relief, compensatory damages, that the administrative process cannot grant.  (*Id*. at 4.)  Plaintiffs rely in part on *W.B. v. Matula* in which the Third Circuit did not require plaintiffs who sought only compensatory damages to exhaust the administrative process.  *W.B.*, 67 F.3d at 496.  *W.B.* differs from the case at hand in several important respects.  For example, the *W.B.* plaintiffs had undergone "extensive administrative proceedings," which included four administrative due process hearings, prior to seeking judicial relief.  *Id.* at 488-90.  Furthermore, the factual record in *W.B.* was fully developed because the child's classification and placement had been resolved through numerous proceedings before an

---

require special education, M. is protected under Section 504 but is not entitled to protections under the IDEA. *See Molly L. v. Lower Merion Sch. Dist.*, 194 F. Supp. 2d 422, 427 (E.D. Pa. 2002); 20 U.S.C. § 1401(3) (defining child with disability)*.*  Although the Amended Complaint does not explicitly challenge the District's determination, for the purposes of this motion, the Court assumes that Plaintiffs challenge M.'s classification under the IDEA and that, therefore, M. has standing to bring an IDEA claim.  Such a challenge is unmistakably within the province of the IDEA administrative process.  *See* 20 U.S.C. 1415(b)(6), (f)(1)(A).

administrative law judge. *Id*. at 496. In fact, all substantive issues had been resolved, and a binding settlement agreement was in place. *Id*. Damages were therefore the sole issue to be addressed by a court, and the administrative process would have been unable to provide plaintiffs any relief. *Id*.

Here, Plaintiffs seek equitable relief in addition to damages, many issues beyond damages require resolution, and no factual record has been developed. In addition to compensatory and punitive damages, Plaintiffs seek injunctive relief, which is available through the administrative process. M.'s IDEA claim raises substantive issues other than damages, including the adequacy of his 504 Plan, the safety of his school environment and his classification under the IDEA. Moreover, a court would greatly benefit from the educational expertise that the state administrative process will bring to this case. *See Falzett*, 150 F. Supp. 2d at 704-705 (M.D. Pa. 2001) ("Federal courts, which are generalists with no expertise in the educational needs of handicapped children, are given the benefit of expert fact finding by a state agency devoted to this very purpose." (*quoting Crocker v. Tenn. Secondary Sch. Athletic Ass'n*, 873 F.2d 933, 935 (6th Cir. 1989))). For these reasons, this case is distinguishable from *W.B.*, and administrative exhaustion is required. *See Hesling v. Avon Grove Sch. Dist.*, 428 F. Supp. 2d 262, 274 (E.D. Pa. 2006) (*W.B.*'s holding excusing exhaustion not controlling when part of relief sought, declaratory relief under IDEA, is available through administrative process); *Falzett*, 150 F. Supp. 2d at 704-705 (distinguishing *W.B.* because there had been no administrative proceedings, substantive issues remained unresolved and plaintiffs sought relief available through administrative process, tuition reimbursement, in addition to compensatory damages). Accordingly, the Court dismisses Plaintiffs' IDEA claim and related Section 1983 claim without prejudice for failure to exhaust administrative remedies.

D.      Section 504 Claim

Plaintiffs' Section 504 discrimination claim requires administrative exhaustion if it seeks relief that is also available under the IDEA.  20 U.S.C. § 1415(l).  The availability of IDEA relief for the Section 504 discrimination claim is underscored by the fact that Plaintiffs bring discrimination disability claims against Defendants under both the IDEA and Section 504.  S*ee W.L.G. v. Houston County Bd. of Educ.*, 957 F. Supp. 1317, 1328 (M.D. Ala. 1997) (Section 504 claims that are identical to claims alleged under IDEA must exhaust administrative remedies).

Plaintiffs' Section 504 claim requires exhaustion because the IDEA administrative process offers potential relief for the injuries that M. allegedly suffered as a result of Defendants' discrimination.  The Amended Complaint describes some of M.'s injuries as follows:

> As a direct and proximate result of all defendants' illegal conduct in permitting M. to be unfairly evaluated, punished, ridiculed and assaulted, he suffers severe mental and physical anxiety, fear, retaliation, mental anguish, loss of appetite, intimidation, depression, public humiliation at school, and disgrace among his peers because of his handicap.

(Am. Compl. ¶ 55.)  Plaintiffs assert that Defendants' discrimination has led M. to require a psychologist.  (*Id*. ¶¶ 18, 58.)  Services available under the IDEA include psychological counseling for students and parents that is provided by qualified social workers, psychologists, and guidance counselors.  20 U.S.C. § 1401 (26)(A); 34 C.F.R. 300.14.  Thus, through the IDEA administrative process the District could be required to provide M. with psychological counseling services.  *See Charlie F.*, 98 F.3d at 992-93.  Also, the administrative process could provide injunctive relief to address the allegations that the District has denied M. the same educational opportunities it provides to non-handicapped students.

Furthermore, Plaintiffs' Section 504 claim is within the ambit of the IDEA administrative

14

process because Plaintiffs assert that Defendants' discrimination, based on M.'s handicap, interfered with his education and led to the denial of a FAPE. *See S.S. v. E. Ky. Univ.*, 307 F. Supp. 2d 853 (E.D. Ky. 2004) (dismissing Section 504 and ADA claims, among other claims, for lack of administrative exhaustion because claims related to FAPE where school allegedly failed to protect disabled student from abuse and harassment by peers); *Kubistal v. Hirsch*, Civ. A. No. 98-3838, 1999 U.S. Dist. LEXIS 1613 (N.D. Ill. Feb. 9, 1999) (dismissing student's disability discrimination claim under ADA because it related to FAPE where teacher called student "butthead" and otherwise ridiculed him over semester, causing the student depression). In fact, when faced with students' disability discrimination claims based on abuse by school employees, many courts have required administrative exhaustion because the claims related to the denial of a FAPE. *See, e.g.*, *Charlie F. v. Bd. of Educ. of Skokie Sch. Dist.*, 98 F.3d 989 (7th Cir. 1996); *Bowden v. Dever,* Civ. A. No. 00-12308, 2002 U.S. Dist. LEXIS 5203 (D. Mass. Mar. 20, 2002); *Kubistal v. Hirsch*, 1999 U.S. Dist. LEXIS 1613.

In *Charlie F. v. Board of Education of Skokie School District*, a fourth grade student, who suffered from attention deficit disorder and panic attacks, brought Section 504, the Americans with Disabilities Act ("ADA"), and federal civil rights claims. 98 F.3d at 990. The student sought compensatory damages, alleging that the school district and its employees discriminated against him because a teacher held "gripe sessions" about him with his classmates. *Id*. The "gripe sessions" led to "humiliation, fistfights, mistrust, loss of confidence and self-esteem, and disruption of Charlie's educational progress." *Id*. The court determined that the allegations "have both an educational source and an adverse educational consequence." *Id*. at 993. The court dismissed the action for failure to exhaust administrative remedies, stating: "Both the genesis and the manifestations of the

15

problem are educational; the IDEA offers comprehensive educational solutions; we conclude, therefore, that at least in principle relief is available under the IDEA." *Id*.

In *Bowden v. Dever*, two autistic students alleged psychological and physical abuse by their teachers and aides, and they brought claims under Section 504, the ADA, the Fourteenth Amendment, and Section 1983. 2002 U.S. Dist. LEXIS 5203, at *1-*3. The students alleged that the abuse denied them the benefits of an education and an equal educational opportunity. *Id*. at *11-*12. They argued that claims of physical abuse were not subject to administrative exhaustion because they are non-educational claims. *Id*. at *12. The court disagreed because "a school's treatment of a student's disability will necessarily encompass both educational and non-educational services . . . and it may be impossible to distinguish them completely." *Id*. at *13. The court dismissed the students' Section 504 and ADA discrimination claims for failure to exhaust because "any aspect of the school's treatment that interferes with the provision of a [FAPE] is within the scope of the IDEA's administrative procedures." *Id*. at *14.

In this case, the Amended Complaint states: "Defendants failed to provide M. with a [FAPE] by failing to provide a safe school environment where he would not be bullied, humiliated, assaulted, intimidated, and ridiculed by a rogue teacher protected by the school district." (Am. Comp. ¶ 53.) Plaintiffs allege the disability discrimination caused M. educational injury:

> Defendants' conduct caused M. and his parents to suffer loss of educational benefit for M. and his enjoyment of school social events, a disruption in his academic instruction, a delay in academic services, a negative impact for services for visual, motor and other impairments, and a denial of a [FAPE]. Defendants' conduct caused M. further harm by aiding and perpetuating discriminatory treatment and negating services by independent professionals, and by delaying and denying academic services and excluding M. from school.

(*Id*. ¶¶ 56-57; *see also id*. ¶¶ 26, 66.) These allegations make it apparent that the Section 504 claim

requires administrative exhaustion because they emphasize the educational impact of the discrimination and allege denial of a FAPE.

Arguing that they do not need to exhaust administrative remedies for their Section 504 claim, Plaintiffs rely on *M.P. v. Independent School District No. 721*, 326 F.3d 975 (8th Cir. 2003). (Pls.' Mem. of Law in Opp'n to Def. Thompson's Mot. to Dismiss at 4-6.) In *M.P.*, the Eighth Circuit held that disputed facts regarding the school district's failure to address disability-based harassment precluded summary judgment on M.P.'s Section 504 claim. But Plaintiffs neglect to cite to the Eighth Circuit's subsequent decision in that case, *M.P. v. Independent School District No. 721*, 439 F.3d 865 (8th Cir. 2006) ("*M.P. II*"). In *M.P. II*, the Eighth Circuit overturned the district court's enforcement of administrative exhaustion for the Section 504 claim, concluding that "[t]he School District's alleged failure to protect M.P. from unlawful discrimination on the basis of his disability is a claim wholly unrelated to . . . [FAPE] decisions. We therefore hold that M.P. has a right of action for damages under Section 504." *Id.* at 868. In contrast to *M.P.* II, Plaintiffs' allegations of discrimination are related to a FAPE, and therefore their Section 504 claim must be exhausted administratively.

The Court also rejects Plaintiffs' argument that 22 Pa Code 15.10 permits them to avoid administrative exhaustion. (Pls.' Answer in Opp'n to Defs.' Mot. to Dismiss ¶ 3; Pl.'s Mem. at 12.) That provision of the code does not distinguish between discrimination claims that entail educational injury for which relief is available under the IDEA and discrimination claims that are outside the realm of the IDEA. *See* 22 Pa Code 15.10 (2006) ("A student filing a claim of discrimination need not exhaust the procedures in this chapter prior to initiating a court action under Section 504."). Yet, Plaintiffs' Section 504 claim alleges deprivation of educational opportunities and denial of a FAPE,

which can be redressed, at least in part, through the IDEA administrative process.

Furthermore, if the Court were to adopt Plaintiffs' interpretation of 22 PA CODE 15.10 as a directive that no Section 504 discrimination claim requires administrative exhaustion, then such a directive is preempted by the IDEA's administrative exhaustion requirement. *See St. Thomas-St. John Hotel & Tourism Assoc., Inc. v. Virgin Islands*, 218 F.3d 232, 238 (3d Cir. 2000) (Conflict preemption "arises when a state law makes it impossible to comply with both state and federal law or when the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" (*quoting Hines v. Davidowitz*, 312 U.S. 52, 67 (1941))).

For these reasons, the Court dismisses Plaintiffs' Section 504 claim without prejudice for failure to exhaust administrative remedies.

### E.    Equal Protection Claim

The Equal Protection Clause requires that the law treat similarly situated people alike.  U.S. CONST. amend. XIV, § 1; *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Plaintiffs assert that an equal protection violation resulted from Defendants' discrimination against M. based on handicap, which denied him an equal educational experience.  (Am. Compl. Count I; Pls.' Answer to Defs.' Mot. to Dismiss ¶¶ 10-12.)  Plaintiffs' equal protection claim is based on the same allegations of disability discrimination used to support their IDEA claim.  (Am. Compl. Count I.) Thus, the findings of educational professionals who review Plaintiffs' IDEA and Section 504 claims during the administrative process will be of great relevance and assistance to the adjudication of Plaintiffs' equal protection claim, but such adjudication must await administrative exhaustion.  This is because Plaintiffs' equal protection claim is the same as Plaintiffs' IDEA and Section 504 claims that allege disability discrimination and FAPE denial.  *See W.L.G.*, 957 F. Supp. 1317, 1329 (equal

protection claim related to failure to provide FAPE is subject to administrative exhaustion). Accordingly, the Court dismisses Plaintiffs' equal protection claim brought pursuant to Section 1983 without prejudice for failure to exhaust administrative remedies. *See, e.g.*, *Charlie F.*, 98 F.3d 989 (dismissing disabled student's federal equal protection claim for failure to exhaust IDEA administrative process); *S.S.*, 307 F. Supp. 2d 853 (same); *Franklin v. Frid*, 7 F. Supp. 2d 920 (W.D. Mich. 1998) (same); *W.L.G.*, 957 F. Supp. 1317 (same).

### F.    Due Process Claims

#### 1.    *Procedural Due Process*

The procedural component of the Due Process Clause requires that constitutionally adequate procedures be provided if the state deprives an individual of certain substantive rights.  U.S. CONST. amend. XIV, § 1; *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (U.S. 1985).  Plaintiffs identify the basis for their procedural due process claim as a property interest in M.'s Section 504 Plan.  (Pls.' Mem. at 12.)  Yet, Plaintiffs have not alleged procedural inadequacies to support a procedural due process claim, nor have they requested an administrative due process hearing.  The Court dismisses Plaintiffs' procedural due process claim without prejudice, and Plaintiffs may bring such a claim in court once they have invoked the due process that the IDEA's procedural mechanism offers.  *See Charlie F.*, 98 F.3d 989 (dismissing disabled student's federal procedural due process claim for failure to exhaust IDEA administrative process); *W.L.G.*, 957 F. Supp. 1317 (same).

#### 2.    *Substantive Due Process*

The substantive component of the Due Process Clause protects individual liberty and property interests from state conduct that is "arbitrary, or conscience shocking, in a constitutional sense."  *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998); *Nicholas v. Penn. State Univ.*,

19

227 F.3d 133, 139 (3d Cir. 2000).  Plaintiffs' substantive due process claims appear to arise from:
(1) Defendants' failure to provide a FAPE and implement M.'s 504 Plan; and (2) Defendants' failure
to protect M. from bodily harm.  (Am. Compl. ¶¶ 50, 53, 55-56; Pls.' Mem. at 12.)  Administrative
exhaustion would be futile for these claims, as they fail to state a claim upon which relief can be
granted.

The denial of a FAPE and failure to implement a 504 Plan do not give rise to a substantive
due process violation because the substantive component of the Due Process Clause does not protect
educational interests.  *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33-38 (1973)
(education not fundamental right or liberty); *Nicholas*, 227 F.3d at 141 (3d Cir. 2000) ("[A] property
interest must be constitutionally 'fundamental' in order to implicate substantive due process."); *see
also Kevin M.*, 2002 U.S. Dist. LEXIS 22509, at *23-*24 (dismissing student's substantive due
process claims based on denial of FAPE).  Accordingly, Plaintiffs' substantive due process claim
based on M.'s educational interests are dismissed for failure to identify a property interest that is
protected by the Due Process Clause.  *See Nicholas*, 227 F.3d at 139-140 (due process-protected
property interest is threshold element plaintiff must establish for non-legislative substantive due
process claim).

Plaintiffs also claim that Thompson's misconduct toward M. violated his substantive due
process right to bodily integrity.  The harmful interactions that are alleged to have occurred between
Thompson and M. include one incident of negative comments about M.'s handwriting, which led
M. to seek psychological counseling, and several incidents of staring and intimidation.  (Am. Compl.
¶¶ 15, 18, 21, 25, 30, 32, 44.)  These interactions caused M. to cry and to feel humiliated and unsafe
at school.  (*Id*. ¶¶ 16, 21, 26, 30, 44, 55.)  Thompson is also alleged to have deliberately stepped on

M.'s finger, causing M. pain and requiring his finger to be put in a splint.  (*Id.* ¶¶ 45, 87.)  These incidents, however, do not illustrate sufficiently severe verbal, psychological or physical abuse to qualify as conscience-shocking behavior.  *See County of Sacramento*, 523 U.S. at 847 (Conscience-shocking behavior is "so 'brutal' and 'offensive' that it [does] not comport with traditional ideas of fair play and decency." (*quoting Breithaupt v. Abram*, 352 U.S. 432, 435 (1957))); *see also Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168 (2d Cir. 2002) (affirming district court's dismissal of student's substantive due process claim for failure to allege conscience-shocking behavior where teacher forcefully slapped student's face causing severe physical pain and emotional pain for which student underwent psychotherapy); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 725-26 (6th Cir. 1996) (affirming district court's dismissal of students' substantive due process claims for failure to allege conscience-shocking behavior where teacher slapped one student's face and grabbed her chin and rubbed another female student's stomach in school hallway and made suggestive remark).

The finger-stepping incident does not describe physical abuse that rises to the level of a constitutional violation.  *See, e.g.*, *Kurilla v. Callahan*, 68 F. Supp. 2d 556 (M.D. Pa. 1999) (teacher striking student in chest causing bruising and anxiety not conscience-shocking behavior); *Brooks v. Sch. Bd. of City of Richmond*, 569 F. Supp. 1534 (E.D. Va. 1983) (dismissing substantive due process claim based on teacher piercing student's arm with straight pin).  More severe physical abuse and resulting harm than what Plaintiffs allege is necessary to state a substantive due process claim. *See, e.g.*, *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246 (2d Cir.  2001) (substantive due process claim alleges conscience-shocking behavior where teacher lifted eighth-grade student off ground by neck, choked and dragged him across floor, punched his face, and slammed his head into

21

bleachers and metal fuse box); *Hall v. Tawney*, 621 F. 2d 607 (4th Cir. 1980) (reversing district court's dismissal of substantive due process claim based on allegations that teacher paddled, shoved and violently struggled with grade school student who required emergency room treatment and ten days hospitalization after sustaining extensive soft tissue injuries as well as possibly permanent spinal injuries).

Allegations of non-physical harassment and psychological abuse, such as Thompson ridiculing M.'s handwriting and staring at him, must also meet the "shocks the conscience" standard. *Jones v. Wittinski*, 931 F. Supp. 364, 369 (M.D. Pa. 1996). Courts that have considered substantive due process claims based on psychological and verbal abuse by government actors have typically found that such conduct alone does not constitute a constitutional violation. *S.M. v. Lakeland Sch. Dist.*, 148 F. Supp. 2d 542, 547 (M.D. Pa. 2001) (discussing and citing cases). Here, Plaintiffs' allegations of non-physical abuse do not describe conscience-shocking behavior sufficient to support a substantive due process violation. *See, e.g.*, *Abeyta v. Chama Valley Indep. Sch. Dist.*, 77 F.3d 1253 (10th Cir. 1996) (no substantive due process violation where teacher repeatedly called 12-year old student "a prostitute" in front of class over 6-week period and allowed other students to similarly taunt her). In *S.M. v. Lakeland School District*, a student's fifth grade teacher singled her out and repeatedly yelled at her during class, asking why she did not know the answer to a math problem. 148 F. Supp. 2d at 543-44. The teacher pointed his finger in the student's face, and she began to cry. *Id.* at 544-45. The day of the incident the student was upset and had trouble sleeping. *Id.* at 545. The day after the incident the student developed hives, complained of a nervous stomach for two days, and saw a doctor for these issues. *Id.* The court found that the teacher's verbal abuse was not actionable under the Due Process Clause. *Id.* at 548-49. Similarly, this Court concludes that

Thompson's alleged mocking of M.'s handwriting and repeated staring, while inappropriate, do not describe conscience-shocking behavior.

In sum, Plaintiffs' allegations of abuse do not support a substantive due process claim, and these allegations are appropriately addressed through common law tort claims, which Plaintiffs also raise. *See County of Sacramento*, 523 U.S. at 847; *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992) ("Because the Due Process Clause does not purport to supplant traditional tort law . . . we have [ ] rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law.") (internal citation omitted); *Kurilla*, 68 F. Supp. 2d at 565.  Plaintiffs' substantive due process claims brought pursuant to Section 1983 are therefore dismissed with prejudice.

### G.    State Law Claims

Having dismissed Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over their state law claims.  28 U.S.C. § 1367(c)(3) (2006) (district court may decline to exercise supplemental jurisdiction when claims giving rise to original jurisdiction have been dismissed).  The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (*quoting Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).  Given the procedural posture of this case, considerations of convenience, fairness and economy do not indicate that the exercise of supplemental jurisdiction is justified.  Accordingly, Plaintiffs' state law claims are dismissed without prejudice.

**IV.      CONCLUSION**

For the reasons discussed above, the Court dismisses this case in its entirety.  An appropriate

Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| M.M., a minor, by his parents and natural guardians, and J.M. and V.M., individually in their own right, | : : : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| TREDYFFRIN/EASTTOWN SCHOOL | : | No. 06-1966 |
| DISTRICT and its BOARD OF DIRECTORS, | : | |
| DANIEL WATERS, JOYCE VIDELOCK, | : | |
| BETH ANNE KOB, and WALT THOMPSON, | : | |
| Defendants. | : | |

**ORDER**

**AND NOW**, this **1st** day of **September**, **2006**, upon consideration of Defendants' motions to dismiss (Document Nos. 10 & 12), Plaintiffs' responses thereto, and for the foregoing reasons, it is hereby **ORDERED** that the motions are **GRANTED** as follows:

1. All federal claims brought by J.M. and V.M. individually in their own right are **DISMISSED with prejudice**.

2. Plaintiffs' substantive due process claim brought pursuant to Section 1983 is **DISMISSED with prejudice**.

3. Plaintiffs' IDEA and Section 504 claims are **DISMISSED without prejudice**.

4. Plaintiffs' Section 1983 claims premised on violations of the IDEA, the Equal Protection Clause and the procedural component of the Due Process Clause are **DISMISSED without prejudice**.

5. Plaintiffs' state law claims are **DISMISSED without prejudice**.

6.      The Clerk of Court is directed to close this case.

**BY THE COURT:**

**Berle M. Schiller, J.**